**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | | |
|---|---|---|
| ----------------------------------------------- | : | |
| **In re BULLITT COUNTY TRAIN** | : | **CIV. NO. 3:07-CV-24-R** |
| **DERAILMENT LITIGATION** | : | |
| | : | **HON. THOMAS B. RUSSELL** |
| ----------------------------------------------- | | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AN
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS
AND EXPENSES, AND FOR AN INCENTIVE AWARD
FOR THE NAMED PLAINTIFFS**

W. Lewis Garrison, Jr.
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, AL 35203
205- 326-3336
205-326-3332 (fax)
wlgarrison@hgdlawfirm.com

Lee L. Coleman
HUGHES & COLEMAN
1256 Campbell Lane, Suite 201
P.O. Box 10120
Bowling Green, KY 42102

John E. Spainhour
GIVHAN & SPAINHOUR
Professional Building, Suite One
200 South Buckman Street
Shepherdsville, KY 40165

Barry G. Reed
ZIMMERMAN REED, PLLP
14646 N. Kierland Blvd.
Suite 145
Scottsdale, AZ 85254

M. Scott Barrett
BARRETT & ASSOCIATES
520 N. Walnut Street
P.O. Box 5233
Bloomington, IN 47407

Counsel for Plaintiffs

## <u>TABLE OF CONTENTS</u>

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii - vi

Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     The Requested Fee Award Is Fair and Reasonable . . . . . . . . . . . . . . . . . . . . 4

       A.     Attorneys' Fees in Common Fund Cases . . . . . . . . . . . . . . . . . . . . . . . 4

       B.     Methods for Calculating Attorneys' Fees . . . . . . . . . . . . . . . . . . . . . . 5

              1.     The Traditional Percentage-of-the-Recovery
                     Method in Common Fund Cases . . . . . . . . . . . . . . . . . . 5

              2.     Development of the "Lodestar Multiplier"
                     Approach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              3.     Judicial Preference for Percentage of the Common
                     Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              4.     Common Fund Fee Awards in the Sixth Circuit . . . . . . . . . . . 7

       C.     The Percentage Requested Is Appropriate . . . . . . . . . . . . . . . . . . . . . 10

       D.     Application of the Sixth Circuit's <u>Ramey</u> Factors . . . . . . . . . . . . . . . 12

              1.     The Value of the Benefit Achieved . . . . . . . . . . . . . . . . . . . . . 13

              2.     Public Policy Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . 13

              3.     The Risks of Litigation and Contingent Nature of Payment   14

              4.     The Value of Services on an Hourly Basis . . . . . . . . . . . . . . . 17

              5.     Complexity of the Litigation . . . . . . . . . . . . . . . . . . . . . . . . . 18

              6.     Quality of the Representation . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.    Reimbursement of Litigation Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.   Request for Named Plaintiffs' Awards . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## CASES

Abrams v. Lightolier, Inc., 50 F.3d 1204 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 19

Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975) . . . . . . . . 5

Ayers v. Sutliff, No. C-I-90-650 (Rubin, J.) (S.D. Ohio Feb. 11, 1992) . . . . . . . . . . 1

Barnes v. City of Cincinnati, 401 F.3d 729 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . 12

Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,
640 F.Supp 697 (S.D. Ohio 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 12, 15, 18-19

Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299 (1985) . . . . . . . . . . . 14

Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Blue Cross  & Blue Shield United v. Marshfield Clinic,
152 F.3d 588 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Blum v. Stenson, 465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

Bowling v. Pfizer, Inc., 102 F. 3d 777 (6th Cir. 1996) . . . . . . . . . . . . . . . 1, 4, 8, 10, 17

Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42,
8 F.3d 722 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Brotherton v. Cleveland, 141 F. Supp. 2d 907 (S.D. Ohio 2001) . . . . . . . . 3, 5, 12, 22

Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768 (11th Cir. 1991) . . . . . . . . . . . . . 7

Central R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885) . . . . . . . . . . . . . . . . . . 5

Chrapliwy v. Uniroyal, Inc., 670 F.2d 760 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . 14

City Nat'l Bank v. Am. Commonwealth Fin. Corp.,
657 F.Supp 817 (W.D.N.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

City of Detroit v. Grinnell, 495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . 14

Clark v. Bellsouth,
No. 04 CV 735, 2007 US Dist LEXIS 87138 (W.D. Ky. 2007) . . . . . . . . . . . . . . . . . 12

Cook v. Niedert, 142 F.3d 1004 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Cosgrove v. Sullivan, 759 F.Supp. 166 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . 12

Crosby v. Bowater, Inc. Ret. Plan for Salaried  Employees of

<u>Great N. Paper, Inc.</u>, 262 F.Supp 2d 804, 814 (W.D. Mich. 2003) . . . . . . . . . . . . . . 14

<u>Deposit Guarantee  National Bank v. Roper</u>, 445 U.S. 326 (1980) . . . . . . . . . . . . 13

<u>Dolgow v. Anderson</u>, 43 F.R.D. 472 (E.D.N.Y. 1968) . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Enterprise Energy Corp.v. Columbia Gas Transmission Corp.</u>,
137 F.R.D. 240 (S.D. Ohio 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19, 21

<u>Faircloth v.  Certified Fin. Inc.</u>, No. 99-3097 Section "T"(3),
2001 U.S. Dist. LEXIS 6793 (E.D. La.  May 15, 2001) . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Feerer v. Amoco Prod. Co.</u>, No. 95-0012,
1998 U.S. Dist. LEXIS 22248 (D.N.M. May 28, 1998) . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Gaskill v. Gordon</u>, 160 F.3d 361  (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Godshall v. Franklin Mint Co.</u>, No. 01-6439,
2004 U.S. Dist. LEXIS 23976 (E.D. Pa. December 1, 2004) . . . . . . . . . . . . . . . . . . . 22

<u>Gottlieb v. Barry</u>, 43 F.3d 474 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Greene v. Emersons, Ltd.</u>, [1987 Transfer Binder]
Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. May 20, 1987) . . . . . . . . . . . . . . . . . . . 9

<u>Hadix v. Johnson</u>, 322 F.3d 895 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Hainey v. Parrott</u>, 2007 WL 3308027 (S.D. Ohio 2007) . . . . . . . . . . . . . . . . . . 3, 8, 21

<u>Harman v. Lyphomed, Inc.</u>, 945 F.2d 969 (7th Cir. 1991) . . . . . . . . . . . . . . . . . 7, 15

<u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 10

<u>Howes v. Atkins</u>, 668 F.Supp 1021 (E.D. Ky. 1987) . . . . . . . . . . . . . . . . . . . . . . 6-7, 9

<u>Huguley v. General Motors Corp.</u>, 128 F.R.D. 81 (E.D.Mich. 1989),
<u>aff'd</u> 925 F.2d 1464 (6th Cir.), <u>cert. den. sub nom.</u>, 502 U.S. 909 (1991) . . . . . . . . 21

<u>Humphrey v. Hexion Specialty Chemicals, Inc.</u>,
No. 06 CV 276, 2007 WL 1520929 (W.D. Ky. May 22, 2007) . . . . . . . . . . . . . . . 3, 8

<u>In re Airline Ticket Comm'n Antitrust Litig.</u>, 953 F.Supp 280 (D. Minn. 1997) . . . 9

<u>In re AremisSoft Corp. Sec. Litig.</u>, 210 F.R.D. 109 (D.N.J. 2002) . . . . . . . . . . . . . . 12

<u>In re Beverly Hills Fire Litig.</u>, 639 F.Supp 915 (E.D. Ky. 1986) . . . . . . . . . . . . . . . 12

<u>In re Brand Name Prescription Drugs Antitrust Litig.</u>,

186 F.3d 781 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Broadwing, Inc. ERISA Litigation, 252 F.R.D. 369 (S.D. Ohio 2006) . . . . . . . . 8

In re Cardinal Health Inc. Securities Litigations,
528 F.Supp.2d 752 (S.D. Ohio 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Cendant Corp. PRIDES Litig., 51 F.Supp 2d 537 (D.N.J. 1999) . . . . . . . . . . . 12

In re Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992) . . 6, 11

In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436 (S.D.N.Y. 2004) . . 19-20

In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation,
55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Pac. Enters. Sec. Litig., 47 F.3d 373 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 9

In re Rio Hair Naturalizer Prods. Liab. Litig., 1996 WL 780512 (E.D. Mich. December
20, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Rite Aid Corp. Sec. Litig., 269 F.Supp 2d 603 (E.D. Pa. 2003) . . . . . . . . . . . 12

In re Rite-Aid Corp. Sec. Litig., 146 F.Supp 2d 706 (E.D. Pa. 2001) . . . . . . . . . . . 12

In re Southern Ohio Correctional Facility, 173 F.R.D. 205 (S.D. Ohio 1997) . . . . . . 9

In re Southern Ohio Correctional Facility, 175 F.R.D. 270 (S.D. Ohio 1997) . . . 9, 21

In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation,
268 F.Supp.2d 907 (N.D. Ohio 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Synthroid Mktg. Litig., 264 F.3d 712 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . 11

In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation,
56 F.3d 295 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Unisys Corp. Sec. Litig., C.A. No. 99-5333,
2001 U.S. Dist. LEXIS 20160 (E.D. Pa. December 6, 2001) . . . . . . . . . . . . . . . . . . . 20

In re Washington Public Power Supply Systems Securities Litigation,
19 F.3d 1291 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Kazanas v. Millicom Inc., [1992-1993 Transfer Binder]
Fed. Sec. L. Rep. (CCH) ¶ 97,255 (S.D.N.Y. September 17, 1992) . . . . . . . . . . . . . . 9

Kirchoff v. Flynn, 786 F.2d 320 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

-iv-

Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496 (E.D. Mich. 2000) . . . . . . . . . . . 9

Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,
487 F.2d 161 (3d Cir. 1973) ("Lindy I"), on remand, 382 F.Supp 999
(E.D. Pa. 1974), aff'd in part, vacated in part, 540 F.2d 102, 116-18 (3d Cir. 1976)
("Lindy II") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

Louisville Black Police Officers Organization v. City of Louisville,
700 F.2d 268 (6th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

Malanka v. de Castro, [1990-1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,657
(D. Mass. November 20, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mills v. Elec. Auto-Lite Co., 396 U.S. 375 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

Missouri v. Jenkins, 491 U.S. 274 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17

New England Employees Pension Fund v. Fruit of the Loom, Inc.,
234 F.R.D. 627 (W.D. Ky. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

Perlman v. Feldmann, 160 F.Supp 310 (D. Conn. 1958) . . . . . . . . . . . . . . . . . . . . . 17

Phemister v. Harcourt Brace Jovanovich, Inc., 1984 WL 21981 (N.D. Ill. 1984) . . . 7

Presley v. Carter Hawley Hale Profit Sharing Plan, No. 97-4316,
2000 WL 16437 (N.D. Cal. January 7, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188 (6th Cir. 1974) . . . . . 3, 12-13, 15

Rawlings v. Prudential-Bache Props, Inc., 9 F.3d 513 (6th Cir. 1993) . . 3-4, 7, 8, 10

Ressler v. Jacobson, 149 F.R.D. 651 (M.D. Fla. 1992) . . . . . . . . . . . . . . . . . . . . . . . 16

Revco Securities Litigation, Arsam Co. v. Saloman Brothers, Inc.,
1992 WL 118800 N.D. Ohio 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 11

Robbins v. Koger Props., 129 F.3d 617 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . 16

Roberts v. Texaco, 979 F.Supp 185 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 12

Savoie v. Merchants Bank, 166 F.3d 456 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 7

Serfecz v. Jewel Food Stores, 67 F.3d 591 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 16

Skelton v. General Motors Corp., 860 F.2d 250 (7th Cir. 1988) . . . . . . . . . . . . . . 15

Spann v. AOL Time Warner, Inc., No. 02-8238,
2005 U.S. Dist. LEXIS 10968 (S.D.N.Y. June 7, 2005) . . . . . . . . . . . . . . . . . . . . . . 22

Smillie v. Park Chemical Co., 710 F.2d 271 (6th Cir. 1983) . . . . . . . . . . . . 3, 4, 10, 13

Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . 7

Trustees v. Greenough, 105 U.S. 527 (1882) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999) . . . . . . . . . . 9

Weiss v. Mercedes Benz of N. Am.,
899 F. Supp 1297, 1304 (D.N.J.), aff'd, 66 F.3d 313 (3d Cir. 1995) . . . . . . . . . . . . . 12

Weseley v. Spear, Leeds & Kellogg, 711 F.Supp 713 (E.D.N.Y. 1989) . . . . . . . . . . 15

White Indus. v. Cessna Aircraft Co., 845 F.2d 1497 (8th Cir. 1988) . . . . . . . . . . . 16

Whitford v. First Nationwide Bank, 147 F.R.D. 135 (W.D. Ky. 1992) . . . . . . . . . . 21

Wise v. Popoff, 835 F.Supp 977 (E.D. Mich. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 9

## OTHER AUTHORITIES

Court Awarded Attorney Fees, Report of the Third Circuit Task Force,October 8,
1985 (Arthur R. Miller, Reporter), reprinted in 108 F.R.D. 237 (1985) . . . . . . . . . . . 7

## SUMMARY

Plaintiffs' Counsel submit this Memorandum in support of their Motion, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, for an award of attorneys' fees and reimbursement of costs and expenses incurred in prosecuting this train derailment class action.[1] In addition, the Class Representatives request an incentive award of $2,000 each to Class Representatives Michael Robison, Joann McGaha, Rick McGaha, Gary Wilson, Russell Peacock, John Henry Eddington, Louis Weird, and Barbara Neuschwander, to compensate them for their service to the Class.

Plaintiffs' Counsel have achieved a proposed Settlement that provides for the immediate recovery of $3,000,000.00, in cash (the "Settlement Fund").  Plaintiffs' Counsel believe that the Settlement is an excellent result.  It provides recovery of a substantial portion of the damages suffered by Class members without further delay or risk.  The Settlement is the result of hard-fought litigation and was achieved only after extensive and vigorous arm's-length negotiations by highly experienced counsel on both sides.  The Settlement was presented to this Court for final approval only after Plaintiffs' Counsel conducted a thorough investigation of the facts underlying Plaintiffs' claims, researched applicable law, obtained analysis from experts, and fully satisfied themselves that the settlement was in the Class's best interests.

---

[1]  For purposes of administrative efficiency, Plaintiffs' Counsel file this application jointly. Courts have routinely approved joint fee applications and awarded a single aggregate fee. See, e.g., Bowling v. Pfizer, Inc., 102 F.3d 777, 781 (6th Cir. 1996); Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 640 F. Supp. 697 (S.D. Ohio 1986). Under the Settlement, all attorneys' fees and costs awarded are to be paid to Class Counsel, to be divided among them based upon the agreement of counsel. Ayers v. Sutliff, No. C-I-90-650 (Rubin, J.) (S.D. Ohio Feb. 11, 1992) (Order awarding attorneys' fees at p.4) ("Such [fees] may be divided as class counsel directs").

This train derailment action seeking damages on behalf of the Class was undertaken and prosecuted on a wholly contingent basis.  Recovery was never assured.  Plaintiffs faced, from the outset, serious obstacles to proving liability, causation for Plaintiffs' claimed injuries, and damages.  The issues have been vigorously disputed.  At trial, Defendants would argue based on the environmental data collected in the immediate aftermath of the derailment that there was not exposure to toxic substances sufficient to support the Class members' claims. Defendants denied all wrongdoing and mounted a vigorous defense.  Thus, there was a very real possibility that no recovery would be obtained, notwithstanding Plaintiffs' Counsel's efforts.

As compensation for their efforts on behalf of the Class, Plaintiffs' Counsel respectfully request that the Court award attorneys' fees in the amount of 33 1/3% of the Settlement Fund, or $1,000,000.00, plus accrued interest, if any.  Notably, while the Settlement Agreement (§ 10.1) contains a 35% free sailing provision, Class Counsel seek less.  Plaintiffs' Counsel also seek reimbursement of $88,787.45 in litigation expenses from the settlement fund which they reasonably and necessarily incurred.

Plaintiffs' Fee Application Memorandum focuses on the applicable legal and factual standards for an award of fees and costs and the appropriateness of Plaintiffs' request. In addition, this Memorandum requests modest incentive awards for the Class Representatives.  This Application is premised on several factors, including the substantial monetary result achieved for the Class; the risks undertaken by Plaintiffs' Counsel; and the vigorous and skillful prosecution of the case.

It is well settled that counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved.  Smillie v. Park Chemical Co., 710 F.2d 271, 275 (6th Cir. 1983); Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188 (6th Cir. 1974).  The core inquiry is whether an award is reasonable under the circumstances.  Rawlings v. Prudential-Bache Props, Inc., 9 F.3d 513, 517 (6th Cir. 1993).

Plaintiffs request a fee based upon a percentage of the common fund recovery. This common fund percentage method is consistent with arrangements in the private marketplace, where contingent fee attorneys and their clients routinely enter into such contingent fee contracts. The common fund percentage approach has been widely embraced by courts in this District, this Circuit, and across the country as the best way to calculate an attorneys' fee in a common fund class action.  Plaintiffs' Counsel seek 33 1/3% of the $3,000,000.00 fund created, which is comparable to the percentage of the recovery approved in similar cases. See, e.g., Humphrey v. Hexion Specialty Chemicals, Inc., No. 06 CV 276, 2007 WL 1520929 (W.D. Ky. May 22, 2007) (Heyburn, J.) (32% fee award plus expenses, total award 33 1/3%); Hainey v. Parrott, 2007 WL 3308027 (S.D. Ohio 2007) (awarding 30% of $6 million common fund).

The alternative way, less common in the Sixth Circuit, is to award fees by the lodestar/multiplier method, based upon a calculation of "the number of hours worked, multiplied by a certain hourly rate, and typically further multiplied by a 'multiplier' to account for the cost and risk inherent in advancing fees, the complexity of the case, and the size of the recovery." Brotherton v. Cleveland, 141 F. Supp. 2d 907, 910-911 (S.D. Ohio 2001) (Spiegel, S.J.) (citing Newberg on Class Actions, supra, at § 12.55; see, also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

In most common fund cases in this Circuit, the "lodestar" analysis provides guidance and acts as "cross-check" in determining an appropriate percentage fee award.  See, Bowling v. Pfizer, Inc., 102 F. 3d 777, 780 (6th Cir. 1996) (affirming district court methodology basing fee award on percentage of the fund and cross-checked against the lodestar).  That is, a review of the lodestar is useful to assure that the fee is reasonable under the circumstances.  Rawlings, 9 F.3d at 516; Smillie, 710 F.2d  at 275; Bowling, 102 F.3d 777, 780 (6th Cir. 1996).  The fee sought here by Plaintiffs' counsel represents approximately 1.32 times the total lodestar and, therefore, is lower than the range of multipliers typically awarded in similar common fund cases.

The Sixth Circuit requires a concise, clear explanation of the reasoning for adopting a particular methodology for awarding fees and the factors considered at determining the fee. Hensley, 461 U.S. at 437; Rawlings, 9 F. 3d at 516.  The court must ensure that class counsel are fairly compensated for the amount of work done and the results achieved.  Rawlings, 9 F.3d at 516.  Absent adequate compensation, plaintiffs will not be able to find counsel willing to undertake the risk of common fund class action litigation.  Plaintiffs' Counsel submit that their request for a common fund fee award in the amount of $1,000,000.00, representing 33/ 1/3% of the total recovery and $88,787.45 in costs is fair and reasonable.

## I. THE REQUESTED FEE AWARD IS FAIR AND REASONABLE

## A. ATTORNEYS' FEES IN COMMON FUND CASES

Attorneys' fees are generally awarded to a party in two circumstances:

(1)     Where a "common fund" is created from which the fee is to be paid; or
(2)     Where a "fee- shifting" statute authorizes an award to be assessed against the prevailing party in addition to any recovery obtained.

Here, Plaintiffs' Counsel have recovered a "common fund" for payment to the Class. Because a statutory award involves an additional recovery from the defendant, while a "common fund" award does not, different considerations inform a court's determination of how the fee award should be calculated.  Thus, the applicable case law is that involving common fund fee awards.

More than a century ago, the Supreme Court recognized the "common fund" exception to the general rule that litigants pay their own attorneys' fees.  Trustees v. Greenough, 105 U.S. 527 (1882).  Where Counsel's efforts create a substantial common fund for the benefit of the Class, they are, therefore, entitled to payment from the fund based on a percentage of that fund.  Brotherton v. Cleveland, 141 F.Supp 2d 907, 909 (S.D. Ohio 2001); Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 640 F.Supp 697 (S.D. Ohio 1986) (citing Boeing v. Van Gemert, 444 U.S. 472, 478 (1980); Mills v. Elec. Auto-Lite Co., 396 U.S. 375 (1970)).  See Blum v. Stenson, 465 U.S. 886, 900 n. 16 (1984); Central R.R. & Banking Co. v. Pettus, 113 U.S. 116, 126 (1885).  This "allows a Court to prevent...inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefited by the suit."  Boeing, 444 U.S. at 478.

## B. METHODS FOR CALCULATING ATTORNEYS' FEES

### 1. The Traditional Percentage-of-the-Recovery Method in Common Fund Cases

The method for awarding fees in common fund class action litigation traditionally was based upon a "reasonable percentage" of the amount recovered. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 257 (1975); Basile v. Merrill Lynch Fenner & Smith, 640 F.Supp 697, 699-700 (S.D. Ohio 1986).  The

-5-

percentage method is consistent with, and, indeed, is intended to mirror, practice in the private marketplace, where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. <u>In re Continental Illinois Securities Litigation</u>, 962 F.2d 566, 572 (7th Cir. 1992).

### 2. Development of the "Lodestar Multiplier" Approach

Beginning in the 1970's, some courts advocated using a different approach than the percentage of the common fund. Known as the "Lodestar Multiplier" approach, this method was originally devised by the Third Circuit. <u>Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.</u>, 487 F.2d 161 (3d Cir. 1973) ("<u>Lindy I</u>"), on remand, 382 F.Supp 999 (E.D. Pa. 1974), *aff'd in part, vacated in part*, 540 F.2d 102, 116-18 (3d Cir. 1976) ("<u>Lindy II</u>"). The lodestar/multiplier approach entails two steps. First, to determine the lodestar, the court multiplies the number of hours spent on the case by each attorney's current customary hourly rate. Second, the court adjusts that amount (usually by applying a multiplier) to reflect such factors as the contingent nature of the litigation, the inherent risk of non-payment or underpayment, the quality of the attorney's work, and the result achieved. <u>Lindy I</u>, 487 F.2d at 167-69; <u>Lindy II</u>, 540 F.2d at 116-18.

### 3. Judicial Preference for Percentage of the Common Fund

In 1984, the Supreme Court noted that "under the 'common fund doctrine'…a reasonable [attorneys'] fee is based on a percentage of the fund bestowed on the class…." <u>Blum</u>, 465 U.S. 900 n. 16. Blum's comment caused the award of attorneys' fees based on a percentage of the fund recovered to become the predominant method. <u>See</u>, <u>e.g.</u>, <u>Revco Securities Litigation, Arsam Co. v. Saloman Brothers</u>, Inc., 1992 WL 118800, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio, May 6, 1992); <u>Howes v.</u>

Atkins, 668 F.Supp 1021, 1024 (E.D. Ky. 1987) ("There has been a trend away from the lodestar approach and back to a percentage award in common fund cases."); Phemister v. Harcourt Brace Jovanovich, Inc., 1984 WL 21981, 1984 U.S. Dist. LEXIS 23595 *41 (N.D. Ill. September 14, 1984) (Blum "clearly recognized the propriety of using the percentage of recovery method in a common fund case. Numerous courts have found this simple percentage method appropriate"); See also Court Awarded Attorney Fees, Report of the Third Circuit Task Force, October 8, 1985 (Arthur R. Miller, Reporter), reprinted in 108 F.R.D. 237 (1985) ("Task Force Report") (identifying deficiencies of the Lindy lodestar/multiplier, concluding that while the approach has merit in statutory fee-shifting cases, common fund cases fees should be based on a percentage of the recovery). Two Circuits thereafter required the percentage method in common fund cases. Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1271 (D.C. Cir. 1993); Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768 (11th Cir. 1991).

In addition, seven other Circuits, **including the Sixth Circuit**, have endorsed the percentage approach in common fund cases.  In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d 295, 307 (1st Cir. 1995); Savoie v. Merchants Bank, 166 F.3d 456, 460 (2d Cir. 1999); In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 821-22 (3d Cir. 1995); Rawlings, 9 F.3d at 515-17 (6th Cir.); Harman v. Lyphomed, Inc., 945 F.2d 969, 974-75 (7th Cir. 1991); In re Washington Public Power Supply Systems Securities Litigation, 19 F.3d 1291, 1296 (9th Cir. 1994); Gottlieb v. Barry, 43 F.3d 474, 487 (10th Cir. 1994).

### 4. Common Fund Fee Awards in the Sixth Circuit

In Rawlings, the Sixth Circuit recognized the growing trend towards adoption

of a percentage approach in common fund cases, but declined to require the percentage approach in all cases.  9 F.3d at 517.  While recognizing that in some cases the lodestar plus multiplier approach may be most appropriate,[2] since Rawlings, the district courts in the Sixth Circuit have generally adopted the percentage of the fund method in most common fund cases.  See, Humphrey v. Hexion Specialty Chemicals, Inc., No. 06 CV 276, 2007 WL 1520929 (W.D. Ky. May 22, 2007) (Heyburn, J.); Hainey v. Parrott, 2007 WL 3308027 (S.D. Ohio 2007) (awarding 30% of $6 million common fund); New England Employees Pension Fund v. Fruit of the Loom, Inc., 234 F.R.D. 627 (W.D. Ky. 2006) (McKinley, J.) (awarding 25% of settlement funds totaling $42.3 million);[3] In re Broadwing, Inc. ERISA Litigation, 252 F.R.D. 369, 380 (S.D. Ohio 2006) ("Where Counsel's efforts create a substantial common fund for the benefit of the Class, they are, therefore, entitled to payment from the fund based on a percentage of that fund."); Bowling, 102 F.3d at 780 (awarding percentage of fund).

As recognized in Brotherton, "[t]ypically, the percentage awarded ranges from

---

[2] Each method has its respective advantages and disadvantages. See Bowling, 922 F.Supp. at 1278-79.  "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." Rawlings, 9 F.3d at 516.  Percentage awards have the advantage of rewarding results, and "provide a strong incentive to Plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances." Manners, 1999 US. Dist. LEXIS 22880, at *87.

[3] In very large cases, District Courts generally commonly a sliding scale approach in which the percentage award decreases as the settlement fund increases. See, e.g., In re Cardinal Health Inc. Securities Litigations, 528 F.Supp.2d 752, 763 (S.D. Ohio 2007) ("the Court will follow the 'declining percentage principle,' meaning the percentage of recovery allocated to attorneys' fees decreases as the size of the recovery increases").  In Cardinal Health, the Court awarded more than $107 million - 18% of a settlement fund of more than $597 million (although the lodestar multiplier of six was, "significantly above average, the Court [found] this award reasonable under the circumstances.").

20 to 50 percent of the common fund created." 141 F.Supp 2d at 910 (emphasis added). "Indeed, throughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%." Manners, 1999 US. Dist. LEXIS 22880, at *88 (citing, inter alia, Adams v. Standard Knitting Mills, Inc., [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,377 (E.D. Tenn. January 6, 1978) (35.8% award)).[4]   Courts have commonly awarded fees in the range of 30 to 40 percent of the common fund. See, Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496, 503 (E.D. Mich. 2000) (33-1/3% awarding attorneys' fees of one third of common fund); In re Southern Ohio Correctional Facility, 175 F.R.D. at 279 (awarding 34%); Wise, 835 F.Supp. at 980; Enterprise Energy, 137 F.R.D. at 249-50; Howes v. Atkins, 668 F.Supp 1021 (E.D. Ky. 1987) (40%).  Plaintiffs' counsel's attorneys fee request of 33 1/3%, plus expenses, of the $3,000,000.00 Settlement Fund, created by their efforts, thus is not only consistent with, but below the percentage of some of the comparable fee awards granted in this Circuit and elsewhere.[5]

---

[4]   See also In re Telectronics, 137 F.Supp 2d at 1046 ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund"); In re Southern Ohio Correctional Facility, 173 F.R.D. 205, 217 (S.D. Ohio 1997), rev'd on other grounds, 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund created"); In re Rio Hair Naturalizer Prods. Liab. Litig., No. MDL 1055, 1996 WL 780512, at *18 (E.D. Mich. December 20, 1996) (same); Wise v. Popoff, 835 F.Supp 977, 980 (E.D. Mich. 1993) (same); Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 249-50 (S.D. Ohio 1991) (same).

[5]   Percentage fee awards of one-third and more are quite common.  See, e.g., Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1292-93 (11th Cir. 1999) (affirming award of $13,333,333, or one third, of $40 million dollar reversionary settlement fund, plus $2.4 million of expenses, despite fact that only $6.4 million of fund actually was paid to claimants); In re Pac. Enters. Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995) (33-1/3%); In re Airline Ticket Comm'n Antitrust Litig., 953 F.Supp 280 (D. Minn. 1997) (33.33%); Greene v. Emersons, Ltd., [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. May 20, 1987) (46.2%); Kazanas v. Millicom Inc., [1992-1993 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,255 (S.D.N.Y.

Ultimately, the Sixth Circuit requires that the award of attorneys' fees in common fund cases be reasonable under the circumstances. <u>Rawlings</u>, 9 F.3d at 516; <u>Smillie</u>, 710 F.2d at 275. The district courts have the discretion "to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." <u>Rawlings</u>, 9 F.3d at 516 (affirming district court's use of the lodestar method); <u>cf.</u> <u>Bowling</u>, 102 F.3d at 780 (affirming district court's methodology basing fee award on percentage of the fund and then cross-checking fee against class counsel's lodestar). At bottom, the court must ensure that Class Counsel are fairly compensated for the amount of work done as well as the results achieved. <u>Rawlings</u>, 9 F.3d at 516. Moreover, the court must provide a concise, clear explanation of the reasoning for adopting a particular methodology and the factors considered at arriving at the fee. <u>Hensley</u>, 461 U.S. at 437; <u>Rawlings</u>, 9 F.3d at 516.

## C. THE PERCENTAGE REQUESTED IS APPROPRIATE

In selecting an appropriate percentage award, the Supreme Court recognizes that the fee award is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. <u>Missouri v. Jenkins</u>, 491 U.S. 274, 285 (1989). The goal is to "simulate the market" for counsel's services. In evaluating an attorneys' fee petition, a court's function "is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." <u>Revco Securities Litigation, Arsam Co. v. Saloman Brothers, Inc.</u>, 1992 U.S. Dist. LEXIS 7852 *10 (N.D. Ohio, May 6, 1992) (citing <u>Steinlauf v.</u>

---

September 17, 1992) (33.33%); <u>City Nat'l Bank v. Am. Commonwealth Fin. Corp.</u>, 657 F.Supp 817 (W.D.N.C. 1987) (33.33%); <u>Malanka v. de Castro</u>, [1990-1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,657 (D. Mass. November 20, 1990) (33.33%).

Continental Illinois Corp, later reported as In re Continental Illinois Securities Litigation, 962 F.2d 566, 573 (7th Cir. 1992). Thus, "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."   In re Continental Illinois Securities Litigation at 572; see also In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001). In common fund cases, it is well settled that counsel should be compensated for their services at the fair market value.  Revco Securities, 1992 U.S. Dist. LEXIS 7852 at *12 (citing Louisville Black Police Officers Organization v. City of Louisville, 700 F.2d 268, 277 (6th Cir. 1983)).

Nationally, courts recognize that the "market rate" value for contingent legal services is  generally between 33% and 40% of the recovery.  See, Gaskill v. Gordon, 160 F.3d 361, 362-63  (7th Cir. 1998) ("[t]he typical contingent fee is between 33 and 40 percent, "affirming fee award  of 38% of common fund); Kirchoff v. Flynn, 786 F.2d 320, 324 (7th Cir. 1986) (observing that   "40% is the customary fee in tort litigation" and noting, with approval, contract providing for a  one-third contingent fee if litigation settled prior to trial).[6]

While Plaintiffs' Counsel submit that determination of a fee based upon the common fund  percentage approach is most appropriate, the fee requested, if calculated by the lodestar plus  multiplier method, would result in a de minimis 1.32 multiplier of the lodestar. That is, the total lodestar is $753,450.50 and the total fee requested is $1,000,000.00.  Multipliers are "necessary to reflect the possibility of no recovery."  Faircloth v.  Certified Fin. Inc., No. 99-3097 Section "T"(3), 2001 U.S. Dist.

---

[6]  See also In re Warner Communications, 618 F.Supp at 749 ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions").

LEXIS 6793, at *23 (E.D. La. May 15, 2001) (citation omitted). Recognizing the risk of complex litigation, the Sixth Circuit recently approved a multiplier of 1.75 in a fee calculated on a lodestar basis where no common fund was created. Barnes v. City of Cincinnati, 401 F.3d 729 (6th Cir. 2005). As previously discussed, a multiplier of between approximately 2.0 and 5.0 existed in the fee awards in this District, Clark v. Bellsouth, No. 04 CV 735, 2007 US Dist LEXIS 87138 (W.D. Ky. 2007) (Heyburn, J.) (2.37 multiplier), New England Employees Pension Fund, 234 F.R.D. at 634 (25% of common fund awarded, amounting to a 1.43 multiplier), and elsewhere in the Sixth Circuit, Basile v. Merrill Lynch, In re Fernald, Brotherton v. Cleveland, and Robinson v. Ford Motor Co., well in excess of the 1.32 multiplier applicable to the fee sought by Plaintiffs' Counsel here, further confirming the reasonableness of the 33 1/3% common fund percentage requested. Thus, the very slight multiplier requested here is lower than, or at the low end of, the range awarded by courts,[7] is reasonable and appropriate in light of prevailing market rates, and squarely in line with the 1/3 contingent fee percentages common in individual cases.

## D. APPLICATION OF THE SIXTH CIRCUIT'S RAMEY FACTORS

In Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188 (6th Cir. 1974), the Sixth Circuit identified six factors for consideration in determining the reasonableness of

---

[7] See, e.g., Weiss v. Mercedes Benz of N. Am., 899 F. Supp 1297, 1304 (D.N.J.), aff'd, 66 F.3d 313 (3d Cir. 1995) (9.3 multiplier); Roberts v. Texaco, 979 F.Supp 185 (S.D.N.Y. 1997) (5.5 multiplier); Lemmer v. Golden Books, 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999) (5.38 multiplier); Feerer v. Amoco Prod. Co., No. 95-0012, 1998 U.S. Dist. LEXIS 22248 (D.N.M. May 28, 1998) (4-5 multiplier); In re Rite Aid Corp. Sec. Litig., 269 F.Supp 2d 603, 611 (E.D. Pa. 2003)(4.5-8.5 multiplier); In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 135 (D.N.J. 2002)(4.3 multiplier); In re Rite-Aid Corp. Sec. Litig., 146 F.Supp 2d 706 (E.D. Pa. 2001) (multiplier of 4.5-8.5); In re Cendant Corp. PRIDES Litig., 51 F.Supp 2d 537 (D.N.J. 1999) (7-14 multiplier); Cosgrove v. Sullivan, 759 F.Supp. 166 (S.D.N.Y. 1991) (8.74 multiplier); In re Beverly Hills Fire Litig., 639 F.Supp 915, 924 (E.D. Ky. 1986) (5 multiplier).

a fee award:

    1.      The value of the benefit rendered to the class;

    2.      Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

    3.      Whether the services were undertaken on a contingent fee basis;

    4.      The value of the services on an hourly basis;

    5.      The complexity of the litigation; and,

    6.      The professional skill and standing of counsel on both sides.

Ramey, 508 F.2d at 1196.  See also Smillie, 710 F.2d at 275.  Applying the Ramey factors, Plaintiffs' fee request is fair and reasonable.

### 1. The Value of the Benefit Achieved

Plaintiffs' Counsel have secured a $3,000,000.00 cash settlement, plus interest. While  Plaintiffs believe that they would have prevailed on their claims against Defendants, there were  significant risks that the Class could recover nothing.  The Settlement eliminates these risks.   Instead of facing additional costly litigation and the time, expense, and delays involved in a trial  and appeals, Class members who suffered losses will recover damages in the Settlement.

### 2. Public Policy Considerations

An important factor under Ramey is "society's stake in rewarding attorneys who produce  such benefits in order to maintain an incentive to others."  508 F.2d at 1196.  The courts  consistently recognize that common fund fee awards serve the important purpose of encouraging  individuals to see legal assistance to recover for their injuries, which have also been similarly  suffered by large groups of people. See Mills, 396 U.S. at 396; accord Deposit Guarantee  National Bank v. Roper, 445

U.S. 326, 328 (1980) (the financial inducements offered by the class action procedure have played an important role "in vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."). Adequate compensation is necessary to encourage attorneys to assume the risk of litigation in the public interest. Dolgow v. Anderson, 43 F.R.D. 472, 487, 494 (E.D.N.Y. 1968) ("Every successful suit duly rewarded encourages other suits to redress misconduct and by the same token discourages misconduct which would occasion suit"). Adequately compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of state and federal law. See, Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310 (1985). Protecting the rights of class members in the environs of hazardous railroad tracks is of paramount public interest and, thus, supports a fully compensatory fee award.

### 3. The Risks of Litigation and Contingent Nature of Payment

Courts have long emphasized risk as a crucial factor in determining upward adjustments. See, e.g., Chrapliwy v. Uniroyal, Inc., 670 F.2d 760, 770 (7th Cir. 1982). It is well recognized that an attorney is entitled to a much larger fee when the compensation is contingent than when it is fixed on a time or contractual basis. See, e.g., Crosby v. Bowater, Inc. Ret. Plan for Salaried Employees of Great N. Paper, Inc., 262 F.Supp 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the high fees"; also noting that "the appearance of Plaintiff's counsel in this case precluded Plaintiff's counsel from engaging in other lucrative work") (citation omitted). As stated in City of Detroit v. Grinnell, 495 F.2d 448, 471 (2d Cir. 1974): "[P]erhaps the foremost of these factors [justifying a multiplier] is...the fact that,

-14-

despite the most vigorous and competent efforts, success is never guaranteed." <u>Accord</u> <u>Ramey</u>, 508 F.2d at 1197; <u>Basile</u>, 640 F.Supp at 702; <u>In re Warner Communications</u>, 618 F.Supp at 747-748; <u>see</u> also <u>Weseley v. Spear, Leeds & Kellogg</u>, 711 F.Supp 713, 716 (E.D.N.Y. 1989) ("The most significant factor in the calculation of an upward adjustment is the risk of the litigation."). As <u>Blackie v. Barrack</u>, 524 F.2d 891 (9th Cir. 1975), recognized: "the empirical evidence indicates that a relatively high proportion of class actions are not settled, but disposed of in defendant's favor on preliminary motions." <u>Id.</u> at 899 n.15. Here, Plaintiffs' Counsel pursued train derailment claims that faced a chance of being preempted entirely.

Plaintiffs' Counsel are entitled to a fee that exceeds their lodestar. As the Second Circuit put it: "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." <u>Grinnell</u>, 495 F.2d at 470-71. Moreover, the risks undertaken are those existing at the outset of the case. <u>Harman</u>, 945 F.2d at 976 (contingent multiplier "is designed to reflect the riskiness of the case at the outset"); <u>Skelton v. General Motors Corp.</u>, 860 F.2d 250, 258 (7th Cir. 1988) ("The point at which Plaintiffs settle with defendants...is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them."); <u>Lindy II</u>, 540 F.2d at 112, 117-18. The risk of non-payment in complex cases is very real, particularly when Plaintiffs' Counsel press novel claims, as they did here. Numerous class actions have been pursued diligently, with thousands of lawyer hours expended, but the attorneys received no payment:

> The court is well aware that there are numerous contingent cases such as this where plaintiff's counsel, after investing thousands of hours of time and effort, have received no compensation whatsoever. Numerous cases recognize that the attorney's contingent fee risk is an

> important factor in determining the fee award...  In evaluating [the
> contingent fee] factor the Court will not ignore the pecuniary  loss
> suffered by plaintiffs' counsel in other actions where counsel received
> little  or no fee.

Ressler v. Jacobson, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (citations omitted).

Additionally, this delay in receipt of payment has been recognized by courts as

justification for an enhancement multiplier to be applied to the "lodestar" time.

Warner Communications, 618 F.Supp at 748.

     Despite the very real likelihood that Plaintiffs would obtain no recovery and

that Counsel would not be compensated, Counsel spent approximately 2,041 hours

of labor and $88,787.45 in litigation expenses.  They prosecuted this case on a wholly

contingent basis. There were serious obstacles to proving liability and the amount

of damages.  Throughout the case, Defendants denied all wrongdoing and mounted

a vigorous defense.  In addition, Plaintiffs faced all the risks traditionally associated

with complex class action litigation, including motions to dismiss; denial of class

certification, e.g., White Indus. v. Cessna Aircraft Co., 845 F.2d 1497 (8th Cir. 1988);

an adverse summary judgment decision, e.g., Serfecz v. Jewel Food Stores, 67 F.3d

591 (7th Cir. 1995); rejection of Plaintiffs' damages claims, e.g., Blue Cross  & Blue

Shield United v. Marshfield Clinic, 152 F.3d 588 (7th Cir. 1998); loss at trial, e.g., In

re Brand Name Prescription Drugs Antitrust Litig., 186 F.3d 781 (7th Cir. 1999); and

the overturning of a verdict on appeal, e.g., Robbins v. Koger Props., 129 F.3d 617

(11th Cir. 1997) (overturning $81 million jury verdict). Despite these challenges,

Plaintiffs' Counsel's well-organized efforts led to the best possible recovery under

the circumstances for the Class.

     When Plaintiffs' Counsel undertook this case, it was with the expectation,

since fulfilled,  that they would devote many of hours of hard work and advance

large sums in expenses. Unlike Defendants' attorneys, who were paid on a current hourly, non-contingent basis, Plaintiffs' Counsel have thus far received no compensation for their considerable efforts. Like Defendants' Counsel, however, Plaintiffs' Counsel still had to pay employees, rent, malpractice insurance, general office overhead, and the costs of the litigation. At no time did Plaintiffs' Counsel indicate that they were not willing to take this case to trial; the lawyers and law firms working on this case have federal court trial experience, including in complex actions. When Defendants and their Counsel know that the leading members of the bar are prepared and willing to risk nonpayment and will take the case to trial, rather than accept an unsatisfactory settlement, the result is meaningful damages recoveries for Class Members, as happened here.

Plaintiffs' Counsel's commitment to this case also imposed significant opportunity costs in terms of other employment that they could have accepted in lieu of working on this case. See Perlman v. Feldmann, 160 F.Supp 310 (D. Conn. 1958) ("Great weight is given to the contingent nature of fees with its accompanying risk that the stupendous labor and the substantial overhead and expense might go for naught .... ").

### 4. The Value of Services on an Hourly Basis

In this Circuit, the lodestar figure is used to confirm the reasonableness of the percentage of the fund award. Bowling, 102 F.3d 777, 780 (6th Cir. 1996). Plaintiffs' Counsel who principally worked on this case have expended approximately 2,041 hours in its prosecution. Based on their current rates,[8] their combined lodestar is

---

[8] To compensate for the delay Plaintiffs' Counsel encountered in receiving any compensation for their work in this case, it is appropriate to use Plaintiffs' Counsel's current fee rates in calculating the lodestar. See Missouri v. Jenkins, 491

$753,450.50.  These  attorneys have set forth in their Declarations their actual hours and hourly rates.  Their Declarations establish the reasonableness of these rates and that they are consistent with their training, background, experience and skill. Louisville Black Police Officers Organization, Inc. v. Louisville, 700 F.2d 268 (6th Cir. 1983) (citing Northcross v. Board of Education of Memphis  City Schools, 611 F.2d 624, 638 (6th Cir. 1979), cert. denied, 447 U.S. 911 (1980)).

### 5. Complexity of the Litigation

Train wreck litigation is a highly-specialized and complex area of the law. The type of claims brought here are based on rapidly evolving legal theories that are not firmly established law in the Circuits.  Much of the law is still developing.  There are  significant conflicts between the approaches adopted by different trial courts and appellate courts.

### 6. Quality of the Representation

Plaintiffs' Counsel are well known leaders in train derailment litigation, mass tort litigation, class actions and complex litigation.   See in particular the Affidavits/Declarations of counsel Barry G. Reed and W. Lewis Garrison, Jr., as well as those of John E. Spainhour, M. Scott Barrett and Lee L. Coleman.  They have

---

U.S. 274, 283-84 (1989) (current rates, rather than historical rates, should be applied in order to  compensate for the delay in payment); See, also Basile, 640 F.Supp 697, 703 & n. 7.  The hourly rates found in the Affidavits/Declarations of counsel (Messrs. Reed, Garrison, Spainhour, Barrett and Coleman) are comparable to those found in a case decided more than five years ago, In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation, 268 F.Supp.2d 907, 926 & n.29 (N.D. Ohio 2003) ("Because the hourly rates submitted by attorneys of the same experience varied substantially, the Court 'equalized' the attorneys' lodestar calculations by substituting the following hourly rates, depending on years of practice: 1-5 years, $200/hour; 6-9 years, $300/hour; 10-14 years, $400/hour; and 15 years and over, $500/hour. [FN 29] The Court only substituted these hourly rates, which are higher than the Court normally allows in lodestar calculations, if the rates listed in the application were higher.").

accumulated substantial expertise in class action, complex litigation, train derailments, related areas of law.  The quality of the representation is demonstrated by the benefit achieved for the Class and the efficient prosecution  and resolution of the case.

The quality of opposing counsel also is important when the court evaluates the services rendered by Plaintiffs' Counsel.  <u>Basile</u>, 640 F.Supp. at 704; <u>See</u>, <u>e.g.</u>, <u>In re Global Crossing Sec.  & ERISA Litig.</u>, 225 F.R.D. 436, 467 (S.D.N.Y. 2004); <u>In re Warner Communications</u>, 618 F.Supp. at 749.  Prominent and extremely capable counsel from nationally recognized law firms  represented the Defendants.  These lawyers vigorously defended their clients.  Plaintiffs' Counsel's success against such worthy opponents further evidences the high quality of their work.

## II. REIMBURSEMENT OF LITIGATION COSTS

Plaintiffs' Counsel have unreimbursed expenses of $88,787.45.  They are entitled to be  reimbursed for these expenses in a common fund case.  <u>In re Telectronics</u>, 137 F.Supp.2d at  1036 ("Counsel contributed to the creation of the Settlement Fund, and accordingly, are entitled to receive a reimbursement of their out-of-pocket expenses in the [requested] amount"); <u>Enterprise Energy Group</u>, 137 F.R.D. at 250 (holding that Plaintiffs' counsel was entitled to the full recovery of their expenses from the common fund).  All costs requested are the type of expenses typically billed by attorneys to paying clients in the marketplace. <u>See</u> <u>Northcross</u>, 611 F.2d 624, 639 (6th Cir. 1979); <u>accord</u>, <u>Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42</u>, 8 F.3d 722, 725-726 (11th Cir. 1993) (expenses were reimbursable if such charges would normally be billed to a client); <u>Abrams v. Lightolier, Inc.</u>, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill for clients for them). The

-19-

expenses are summarized in the Affidavit of W. Lewis Garrison, Jr., and detailed in the respective time and billing records of Plaintiffs' Counsel. These expenses include the costs of notice to class members, other postage, photocopying, travel, lodging, long distance telephone, telecopier, computer database research, and expert fees and expenses. Plaintiffs' Counsel submit that these expenses were reasonably and necessarily incurred to achieve the result obtained for the Class and are typically charged to hourly paying clients. Courts routinely find that these categories of expenses should be reimbursed. See Northcross, 611 F.2d at 639-640, 642 (finding it reasonable to provide compensation for photocopying, paralegal expenses, travel, telephone, docket fees, investigation expenses, deposition expenses, witness expenses, experts, charts, and maps); In re Unisys Corp. Sec. Litig., C.A. No. 99-5333, 2001 U.S. Dist. LEXIS 20160, at *13-14 (E.D. Pa. December 6, 2001) (fees and costs associated with expert witnesses and consultants, as well as computer assisted legal research costs are often deemed incidental to a large litigation) (citations omitted); In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. at 468 (filing fees, expert fees, service of process, travel, legal research, as well as document production and review expenses, were "the type for which 'the paying, arms' length market' reimburses attorneys"); In re Cardizem CD Antitrust Litig., 218 F.R.D. at 535 (reimbursement of all litigation related expenses including document productions, experts, consultants, and travel).

In addition, the Notice provided to the Class informed them that Plaintiffs' Counsel would seek reimbursement of their fees and expenses incurred in the prosecution of the Action. To date, no Class member has objected to that request.

-20-

### III. REQUEST FOR NAMED PLAINTIFFS' AWARDS

Plaintiffs seek an award for the Class Representatives, Michael Robison, Joann McGaha, Rick McGaha, Gary Wilson, Russell Peacock, John Henry Eddington, Louis Weird, and Barbara Neuschwander, for their efforts in this case, in a very modest amount of $2,000 each.

It is common for courts, exercising their discretion, to award special compensation to class representatives in recognition of the time and effort they have invested for the benefit of the class, which usually includes providing information to counsel, reviewing and approving pleadings, assisting with discovery, preparing for and/or attending a deposition, and participating in settlement discussions. These awards to class representatives generally are paid from the common fund. See, e.g., Hadix v. Johnson, 322 F.3d 895, 897-898 (6th Cir. 2003). Such awards have been approved in numerous cases and are appropriate here. See also Whitford v. First Nationwide Bank, 147 F.R.D. 135 (W.D. Ky. 1992) (approving $5,000 class representative award); In re Southern Ohio Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); Enterprise Energy Corp., 137 F.R.D. at 250 (courts consider "whether these actions [by the Class Representatives] resulted in a substantial benefit to Class Members"); Huguley v. General Motors Corp., 128 F.R.D. 81, 85 (E.D.Mich. 1989), aff'd 925 F.2d 1464 (6th Cir.), cert. den. sub nom., 502 U.S. 909 (1991) ("Named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation that they have borne"); Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving $25,000 class

representative award); <u>Brotherton v. Cleveland</u>, 141 F.Supp 2d 907 (awarding named plaintiff and class representative incentive fee of $50,000); <u>Spann v. AOL Time Warner, Inc.</u>, No. 02-8238, 2005 U.S. Dist. LEXIS 10968, at *14 (S.D.N.Y. June 7, 2005) (awarding class representatives $10,000.00 each); <u>Godshall v. Franklin Mint Co.</u>, No. 01-6439,  2004 U.S. Dist. LEXIS 23976, at *25 (E.D. Pa. December 1, 2004) (awarding class representatives $20,000.00 each); <u>Presley v. Carter Hawley Hale Profit Sharing Plan, No. 97-4316</u>, 2000 WL  16437, at *2 (N.D. Cal. January 7, 2000) (awarding class representatives $25,000.00 each).

## IV.  CONCLUSION

Plaintiffs' Counsel request a fee of $1,000,000.00, amounting to 33 1/3% of the total $3,000,000.00 Settlement, which is the "common fund" recovered on behalf of the Class, and reimbursement of expenses in the amount of $88,787.45.  Analyzed alternatively under the lodestar/multiplier method, the fee amounts to a very slight multiple of the attorneys' lodestar.  The multiplier is 1.32 ($753,450.50 lodestar x 1.32 = approximately $1,000,000.00).

Plaintiffs' attorneys fee award will not only compensate Class Counsel appointed by the Court in this case, it will serve to encourage other attorneys to protect the rights of others who are damaged by the aftermath of train derailments. Plaintiffs respectfully request that this Court award an attorneys' fee in the amount of 33 1/3% of the common Settlement Fund recovered for the benefit of the Class, together with reimbursement of $88,787.45 expenses advanced by Class Counsel as reasonable and necessary expenses of litigation.

Plaintiffs also ask the Court to award incentive awards of $2,000.00 each of the Named Plaintiffs, Michael Robison, Joann McGaha, Rick McGaha, Gary Wilson,

Russell Peacock, John Henry Eddington, Louis Weird, and Barbara Neuschwander.

Respectfully submitted this 24th day of November, 2008.


HENINGER GARRISON DAVIS, LLC


By: /s/ W. Lewis Garrison, Jr.
Counsel for Plaintiffs
2224 First Avenue North
Birmingham, AL 35203
(205) 326 3336
(205) 326 3332 (fax)
wlgarrison@hgdlawfirm.com

**Of Counsel:**

Lee L. Coleman
HUGHES & COLEMAN
1256 Campbell Lane, Suite 201
P.O. Box 10120
Bowling Green, KY 42102
(270) 782-6000
Fax (270) 843-0446

John E. Spainhour
GIVHAN & SPAINHOUR
Professional Building, Suite One
200 South Buckman Street
Shepherdsville, KY  40165
(502) 543-2218

Barry G. Reed
ZIMMERMAN REED, PLLP
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ  85254
(480) 348-6400

M. Scott Barrett
BARRETT & ASSOCIATES
520 N. Walnut Street
P.O. Box 5233
Bloomington, IN 47407
(812) 334-2600

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this 24th day of November, 2008, I electronically filed the foregoing with the Clerk of Court using the EM/ECF system, which will automatically send email notification of such filing to attorneys of record in these proceedings, including those attorneys of record for the Defendants shown next, and further, that I caused a copy of the foregoing to be mailed, first-class postage pre-paid, addressed correctly, to the two objectors in this matter, as follows:

Edward H. Stopher
Darryl S. Lavery
BOEHL STOPHER & GRAVES, LLP
AEGON Center Suite 2300
400 W. Market Street
Louisville, KY 40202-3354

Knox D. Nunnally
Scott Statham
Sandra G. Rodriguez
Lewis Sutherland
VINSON & ELKINS L.L.P.
1001 Fanin Street, Suite 2500
Houston TX 77002-6760

Jere F. White, Jr.
Lana Alcorn Olson
LIGHTFOOT FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200

Crystal Frey
230 Cherry Street
Shepherdsville KY 40165

Thomas Millay
864 Running Creek Drive
Shepherdsville KY 40165

            <u>/s/ W. Lewis Garrison, Jr.</u>